UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-11037-RGS
CRIMINAL ACTION NO. 08-10078-RGS

THIEN HA

v.

UNITED STATES OF AMERICA

MEMORANDUM AND ORDER ON PETITIONER'S
MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

February 24, 2012

STEARNS, D.J.

Thien Ha moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Ha argues that his guilty plea was not intelligent and voluntary; that despite a substantial downward variance from the advisory sentencing guidelines, more could have been accomplished by way of challenging the factual predicates on which the ultimate sentence was based;[1] and that his counsel (Stephen Neyman) provided

---

[1] The most vigorously argued challenge to the sentence imposed is the suggestion that the drug quantity attributed to Ha was incorrectly calculated. That issue is foreclosed by the Judgment entered by the Court of Appeals on July 28, 2011, in response to Ha's direct appeal, which specifically found that the drug quantities had been "properly determined" by the district court. Claims identical to those raised on direct appeal may not be relitigated by way of a § 2255 petition unless there is proof of an intervening change in the law sufficient to create a miscarriage of justice. *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004). *See also United States v. Moran*, 1997 WL 51415, at *1 (1st Cir. Feb. 5, 1997) (holding that petitioner may not

generally ineffective assistance.[2] The United States has submitted an opposition to

---

"relitigate issues already raised and rejected in his direct appeal"); *Dirring v. United States*, 370 F.2d 862, 864 (1st Cir. 1967) ("[I]ssues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion.").

[2] In his new attorney's Motion to Clarify Ha's original motion, there is also a passing assertion that the court failed at the sentencing hearing to verify that Ha's prior counsel had reviewed the Presentence Report (PSR) with him. That claim is not discussed further in the brief, and is not supported by the record (in fact, Attorney Neyman filed numerous objections to the PSR covering much of the ground that successor counsel faults him for failing to raise). The allegation may simply be a word processing carryover from a prior client memorandum and merits little by way of discussion because the issue (if there is one) could have been, but was not, raised on direct appeal. *See United States v. Matthews*, 643 F.3d 9, 15 (1st Cir. 2011) ("Allowing the defendant to raise a new argument in a habeas petition when he could (and should) have raised it either at his original sentencing or on direct review or both would undermine the prudential goals of the law of the case doctrine."); *Oakes v. United States*, 400 F.3d 92, 95 (1st Cir. 2005) ("If a federal habeas petitioner challenges his conviction or sentence on a ground that he did not advance on direct appeal, his claim is deemed procedurally defaulted."). *See also United States v. Frady*, 456 U.S. 152, 167-168 (1982) (holding that to raise defaulted claims "a convicted defendant must show both (1) 'cause' . . . and (2) 'actual prejudice' resulting from the errors of which he complains."). Absent a showing of "cause" and "prejudice," a procedural default may still be excused where failure to hear the claim would result in a "fundamental miscarriage of justice." *United States v. Murray*, 477 U.S. 478, 495-496 (1986). This exception may be invoked where "a constitutional violation has probably resulted in the conviction of one who is actually innocent . . . ." *Id.* at 496. In order to satisfy the actual innocence requirement and enable an otherwise barred constitutional claim to be considered on the merits, a petitioner "must show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner [guilty]." *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992). *See also Bousley v. United States*, 523 U.S. 614, 623 (1998). "This is a narrow exception to the cause-and-prejudice imperative, seldom to be used, and explicitly tied to a showing of actual innocence." *Burks v. Dubois*, 55 F.3d 712, 717 (1st Cir. 1995). Ha attempts (unsuccessfully) to shoehorn himself into the exception with the carefully couched claim that his affidavit specifically "aver[s] that he is innocent of the

Ha's motion. For the reasons to be stated, the motion will be denied.

BACKGROUND

Ha was identified by Drug Enforcement Administration (DEA) agents in July of 2007, during an ongoing money laundering and drug investigation precipitated by the seizure in 2006 of a large quantity of "ecstasy" (MDMA) tablets. Over the next month, Ha was overheard in intercepted telephone conversations discussing drug transactions with Thuong Hoang, a Quincy, Massachusetts-based Vietnamese drug dealer. On August 16, 2007, the DEA secured a warrant authorizing a wiretap on Ha's cellular telephone. In September of 2007, drug trafficking conversations were intercepted between Ha and Lee Yin, another known dealer in marijuana and MDMA. In February of 2008, Yin began cooperating with federal authorities.[3] In his proffers to the government, Yin stated that he had purchased quantities of 1,000 to 8,000 MDMA pills from Ha on five to seven occasions during 2007, as well as quantities of marijuana ranging from twenty to fifty pounds on approximately five occasions. Yin

---

allegations that he conspired to distribute drugs *in the quantity that the Government alleged*." Pet'r's Mot. to Clarify, at 5 (emphasis added).

[3] Yin eventually pled guilty to drug trafficking and firearms charges in April of 2009.

further stated that Ha had offered to sell him two firearms.[4]

Ha was arrested on February 15, 2008, at his residence in Auburn, Massachusetts. Ha consented to a search of his home, during which agents found a notebook that appeared to be a drug ledger with Ha's name inscribed on the front cover. On March 27, 2008, agents interviewed Tram Quynh Phan, who was the subject of several ongoing drug investigations. Phan was residing in Canada and agreed to be interviewed after being granted limited immunity.[5] Phan said that she had sent shipments of MDMA to Ha on approximately four occasions prior to December of 2007. Two of the shipments consisted of 30,000 pills, and two others consisted of 50,000 pills. Phan also stated that she had been involved in a sale in which Ha had purchased 100 pounds of marijuana.

On April 3, 2008, Ha was charged with conspiracy to distribute MDMA and marijuana, in violation of 21 U.S.C. § 846.[6] On March 8, 2010, the opening day of Ha's trial, he changed his plea to guilty. Prior to Ha's sentencing, the Probation

---

[4] Another cooperating witness (Hung Van Le) corroborated Ha's dealing in illegal firearms.

[5] Agents had earlier intercepted an incriminating telephone conversation between Phan and Ha.

[6] Also named as coconspirator defendants in the indictment were Thuong Duy Hoang, James Biocchi, Robert Lee Glick, and Donnie Herberger.

4

Department in the PSR determined the advisory sentencing guidelines range to be 168 to 210 months, a range that the court (and the government) believed "too harsh" given the disproportionate impact of the attributable drug weight on the guidelines result. Consequently, the court turned to the factors enumerated in 18 U.S.C. § 3553(a), and imposed a far lesser sentence of 90 months to be followed by three years of supervised release.

Ha appealed the sentence to the Court of Appeals for the First Circuit, arguing: (1) that the sentence was unreasonable because of an improper calculation of the attributable drug quantity; (2) that a firearm enhancement should not have been applied; and (3) that the § 3553(a) factors were not given sufficient weight by the court. The Court of Appeals granted the government's motion for a summary disposition and affirmed the judgment of the district court on all three grounds.

## DISCUSSION

Section 2255 is not a substitute for direct appeal, but rather provides for post-conviction relief in four limited instances: "if the petitioner's sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to direct attack." *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998). "The catch-all fourth category includes only assignments of error that reveal 'fundamental defect[s]' which,

5

if uncorrected, will 'result[] in a complete miscarriage of justice,' or irregularities that are 'inconsistent with the rudimentary demands of fair procedure.'" *Id.,* quoting *Hill v. United States*, 368 U.S. 424, 428 (1962). A cognizable § 2255 claim, unless it is constitutional or jurisdictional in nature, must reveal "exceptional circumstances" compelling redress. *David*, 134 F.3d at 474. The petitioner bears the burden of demonstrating an entitlement to relief. *Mack v. United States*, 635 F.2d 20, 26-27 (1st Cir. 1980).

Because almost all of Ha's claims are defaulted, successor counsel has attempted to repackage them as claims of ineffective assistance of counsel.[7] The claim, for example, that he could not understand the Vietnamese interpreter who assisted him (to the extent that he needed an interpreter) at the plea hearing is recast as a failure of counsel to ensure that the interpreter was translating correctly.[8] The reason for this is quite simple. A claim of ineffective assistance may be brought by way of a § 2255 motion without being raised on direct appeal. *Massaro v. United States*, 538 U.S. 500,

---

[7] Ha also argues in passing that his claims should be considered notwithstanding the default because "principles of justice dictate that a plea taken in violation of the United States Constitution should not stand." Pet'r's Mot. to Clarify at 4. This argument is essentially a restatement of Ha's claim that his plea was involuntary because of his counsel's alleged ineffectiveness. *See Murray*, 477 U.S. at 488.

[8] It is not clear how attorney Neyman, who to the court's knowledge does not speak Vietnamese, would be expected to monitor the interpreter's competence, even if the assertion were true.

6

504 (2003). Under this exception to the procedural default rule, a collateral attack may be waged on a guilty plea where the claim of ineffective assistance goes to the validity of the plea itself (or a waiver of the right to collaterally attack the conviction). *See United States v. White*, 307 F.3d 336, 339 (5th Cir. 2002); *Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001).

In this vein, Ha alleges that deficient assistance from Neyman undermined the voluntariness of his guilty plea because Neyman: (1) did not correct his belief that he had to plead guilty because he could no longer afford to pay for attorney services; (2) did not properly supervise the interpreter during the plea hearing; and (3) did not ensure that he understood the full nature and consequences of the plea.[9]

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused

---

[9] Ha makes similar claims with regard to the sentencing hearing, specifically that Neyman should have argued for the application of a lower sentencing guideline range based on a reduced attributable quantity of drugs; that he should have argued for a minimal participant score in calculating the adjusted offense level; that he should have argued that the criminal history category score was overly-inflated by stale convictions; and that he should have argued for a guidelines departure based on exceptional family circumstances. Putting aside the fact that all of these issues were defaulted, these claims are doubly puzzling because the court did not sentence Ha under the guidelines, but turned instead to the § 3553(a) factors because the guideline result was, in the court's estimate, too harsh. Even had the court employed the sentencing guidelines, the sentence imposed of 90 months would have represented a downward departure of 78 months from the *minimum* sentence recommended by the guidelines (a departure far greater than the one Ha now insists that Neyman should have recommended). Under the circumstances, it is inconceivable that Ha could show prejudice from any of the alleged errors he now attributes to his former counsel.

7

shall enjoy the right to . . . have the assistance of counsel for his defence." The right to counsel includes the right to effective counsel. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). Effective counsel does not mean perfect counsel. "Judicial scrutiny of counsel's performance must be highly deferential," and "every effort [should] be made to eliminate the distorting effects of hindsight." *Id.* at 689. The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.*, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955).

> First, a reviewing court must assess the proficiency of counsel's performance under prevailing professional norms. . . . This evaluation demands a fairly tolerant approach; after all, the Constitution pledges to an accused an effective defense, not necessarily a perfect defense or a successful defense. . . . The second line of inquiry . . . entails a showing of a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Scarpa v. Dubois*, 38 F.3d 1, 8 (1st Cir. 1994) (internal quotation marks omitted) (a showing of actual prejudice is a necessary element in almost all cases involving allegations of attorney error).

While a petitioner need not prove that his counsel's deficient conduct more likely than not altered the outcome of the proceeding, he must show that his counsel's errors "had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S.

8

at 693. *See also Dugas v. Coplan*, 506 F.3d 1, 9 (1st Cir. 2007). Where a defendant has pled guilty to a charge, "the prejudice prong of the test requires him to show that, but for his counsel's unprofessional errors, he probably would have insisted on his right to trial." *United States v. LaBonte*, 70 F.3d 1396, 1413 (1st Cir. 1995), *rev'd on other grounds*, 520 U.S. 751 (1997).

Ha bases his claims of ignorance of his rights on the following statement that he made during the course of the plea hearing: "Your Honor, the reason I am not going forward for the trial is because I could not afford any longer, and also I don't have any witnesses." Plea Hr'g Tr. at 13. This one statement of possible confusion on Ha's part was immediately addressed by the court,[10] which proceeded to explain to Ha that he had the right to a jury trial, and with it, the right to Neyman's assistance throughout the jury selection process (which was about to commence) and the trial of the case. The court also inquired of Ha whether he had discussed the consequences of a plea with Neyman, and whether he believed that Neyman had acted at all times in his best interests, to both of which questions Ha gave an affirmative response. *See id.* at 13, 21. The court also (contrary to the suggestion of successor counsel) explained to Ha the

---

[10] Successor counsel claims that Ha was under the impression that if he could not continue to pay Neyman for his services, he was required to forfeit his right to a jury trial. It is just as likely that Ha meant that he could not afford to go to trial because he had no plausible defense.

9

burden of proof in a criminal case, and then illustrated what the assignment of the burden to the government meant for him in practical terms, including the lack of any obligation on his part to present witnesses. When asked whether he understood these explanations, Ha replied that he did. *Id.* at 15. Given the court's inquiries and Ha's responses, it was eminently reasonable for Neyman (and the court) to believe that Ha understood his rights and the consequences of waiving them.

The complaint that Neyman did not ensure that an interpreter was present during the plea hearing is simply not true. Not only was the interpreter present (a second Vietnamese interpreter was present as well) during the entire hearing, the court specifically instructed Ha to use the services of the interpreter whenever he felt the need. Ha chose to answer approximately half of the court's questions spontaneously (and responsively) in English and the other half though the interpreter. At the conclusion of the hearing, the court made note of Ha's impressive English-language proficiency.[11] Because Neyman's performance at the hearing was professionally reasonable, there is no need to address the second (prejudice) prong of the *Strickland* test.

### ORDER

---

[11] The court also noted that Ha had graduated from Lowell High School and prior to his arrest had been studying English at Worcester State College.

For the foregoing reasons, the Motion to Vacate, Set Aside, or Correct Sentence is <u>DENIED</u>.  The Clerk will now close the case.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE